

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In or around June of 2020, the Defendant began facilitating payments for at least two websites selling false identification documents ("fake IDs") and based in mainland China. The Defendant used peer-to-peer platforms to accept funds from customers wishing to order fake IDs, and, after deducting his commission, forward those funds to peer-to-peer accounts controlled by the China-based groups who manufactured the fake IDs. In total, the Defendant facilitated approximately 5,600 fake ID purchases, and transferred over $730,000 in payments, retaining approximately $70,000 as payment for his services.

### June 2024 Law Enforcement Interview

On June 24, 2024, IRS-CI agents approached the Defendant at his place of employment and asked to speak with him regarding financial transactions he recently made. Upon speaking with the agents, the Defendant openly admitted that this activity was related to the purchase of fake IDs. The Defendant stated that he began purchasing fake IDs for his own personal use around 2018, to purchase alcohol and get into bars while underage. Shortly thereafter, the Defendant began facilitating the purchase of fake IDs for people he knew in collage.

Around this time, the Defendant made contact with the proprietors of two fake ID websites, MagicFakeID or OldIronSide (hereinafter, the "websites"), and made arrangements to facilitate payment of third parties' fake ID purchases from these websites, and send those funds in bulk payments back to the websites' proprietors in China. This activity was accomplished using mostly peer-to-peer payment platforms: customers would place their orders for fake IDs on these websites, which would provide the customer with the cost of their order and instructions on how to pay via peer-to-peer transfers. To make a payment, customers would then send the Defendant funds through a peer-to-peer platform. A representative from the websites would contact the Defendant daily to verify which customers had paid for their orders. The Defendant would check this representative's list of customer orders against the deposits in his peer-to-per accounts. The Defendant would then send bulk payments to the group running these websites, who the Defendant knew were located in mainland China.

Rev. August 2018

The Defendant stated that he facilitated these payments for approximately one year and ultimately ended up stopping in July 2021 because PayPal and Venmo announced they were going to start issuing tax documents to individuals with more than $600 in transactions.

Regarding the fake IDs themselves, the Defendant further stated they were of "decent quality" and that they were manufactured in China and shipped to drop shippers in the United States. The fake IDs were often concealed inside other merchandise to deceive customs inspectors.

### Examination of Financial Records

Subpoena records were obtained for many of the Defendant's financial accounts. These records corroborated the Defendant's above statements and show a very high volume of peer-to-peer transfers over several different platforms as wells as significant deposits and withdrawals from the Defendant's personal bank account between approximately June 2020 and July 2021. These deposits occurred multiple times a day with varying amounts from many different individuals. These transactions included notes with description such as "fakes, fake ID, fake ID order, phakes (sic), magic fake ID," or "order/gift" followed by a purported order number.

These financial records show that the Defendant transferred funds he received for fake ID payments in his peer-to-peer accounts into his personal checking account. A summary of the Defendant's checking account activity is as follows:

| Beginning Date | Ending Date | Beginning Balance | Deposits | Withdrawals | Checks | Service Fees | Ending Balance |
|---|---|---|---|---|---|---|---|
| 06/19/2020 | 07/21/2020 | $ 3,642.68 | $ 2,711.00 | $ 2,566.61 | $ - | $ - | $ 3,787.07 |
| 07/22/2020 | 08/19/2020 | $ 3,787.07 | $ 13,301.13 | $ 12,754.58 | $ - | $ - | $ 4,333.62 |
| 08/20/2020 | 09/18/2020 | $ 4,333.62 | $ 23,620.36 | $ 22,794.16 | $ - | $ - | $ 5,159.82 |
| 09/19/2020 | 10/20/2020 | $ 5,159.82 | $ 22,849.56 | $ 22,750.33 | $ - | $ - | $ 5,259.05 |
| 10/21/2020 | 11/17/2020 | $ 5,259.05 | $ 15,887.75 | $ 17,322.23 | $ - | $ - | $ 3,824.57 |
| 11/18/2020 | 12/18/2020 | $ 3,824.57 | $ 23,405.13 | $ 17,267.09 | $ 4,700.00 | $ - | $ 5,262.61 |
| 12/19/2020 | 01/19/2021 | $ 5,262.61 | $ 33,646.91 | $ 34,311.49 | $ 60.00 | $ - | $ 4,538.03 |
| 01/20/2021 | 02/16/2021 | $ 4,538.03 | $ 49,627.11 | $ 49,560.88 | $ 740.00 | $ - | $ 3,864.26 |
| 02/17/2021 | 03/19/2021 | $ 3,864.26 | $ 87,510.24 | $ 75,098.19 | $ 740.00 | $ 136.11 | $ 15,400.20 |
| 03/20/2021 | 04/20/2021 | $ 15,400.20 | $111,359.48 | $104,042.51 | $ 740.00 | $ 2.55 | $ 21,974.62 |
| 04/21/2021 | 05/18/2021 | $ 21,974.62 | $ 98,191.68 | $ 95,087.27 | $ 740.00 | $ - | $ 24,339.03 |
| 05/19/2021 | 06/18/2021 | $ 24,339.03 | $113,666.74 | $116,643.87 | $ - | $ 0.24 | $ 21,361.66 |
| 06/19/2021 | 07/20/2021 | $ 21,361.66 | $135,274.93 | $135,962.15 | $ - | $ 7.50 | $ 20,666.94 |
| 07/21/2021 | 08/19/2021 | $ 20,666.94 | $ 19,589.75 | $ 3,674.76 | $ - | $ 11.62 | $ 36,570.31 |
| 08/20/2021 | 09/20/2021 | $ 36,570.31 | $ 13.00 | $ 2,662.87 | $ 200.00 | $ - | $ 33,720.44 |
| 09/21/2021 | 10/19/2021 | $ 33,720.44 | $ 2,359.59 | $ 3,184.07 | $ - | $ - | $ 32,895.96 |
| 10/20/2021 | 11/17/2021 | $ 32,895.96 | $ 3,393.97 | $ 4,173.52 | $ 100.00 | $ - | $ 32,016.41 |
| | | | $756,408.33 | $719,856.58 | $8,020.00 | $ 158.02 | |

Rev. August 2018

11

Debits from the Defendant's checking account include large amounts of international peer-to-peer transfers to at least eight different accounts. These peer-to-peer accounts were registered to Chinese individuals with addresses, financial institutions, and IP address activity located in mainland China. When initiating these international peer-to-peer transfers, the Defendant would put coffee and money sign emojis in the notes section in an attempt to obfuscate the true source of the funds. In addition, the Defendant's peer-to-peer account display name was set to "Luke Antinone Online," which gave the appearance that these large transfers were coming from an online business.

In total, based on financial records and the Defendant's own statements, the Defendant accepted over $730,000 in payments for the above two China-based fake ID websites. A conservative calculation indicates the Defendant facilitated the purchase of at least 5,600 fake IDs. During the aforementioned conduct, the Defendant was a resident of Maryland and engaged in the above activities while located in Maryland.

7/23/25
Date

Luke Antinone

I am Luke Antinone's attorney. I have carefully reviewed every part of this Agreement, including the sealed supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this Agreement is an informed and voluntary one.

7-23-25
Date

Jeremy Eldridge, Esq.